IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, )
KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, )
EUGENE GEORGE, PAUL SONGER, WILLIAM )
MCCONNELL, MATTHEW AQUILINE, GREGORY R. )
HESS, MICHAEL SCHMERBECK, VINCENT )
DELAZZERO, and BENJAMIN CAPP, )
as Trustees of, and on behalf of, the )
BRICKLAYERS & TROWEL TRADES INTERNATIONAL )
PENSION FUND, )
    620 F Street, N.W. )
    Washington, DC  20004 )
    (202) 783-3788, )
     )
JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, )
EUGENE GEORGE, MATTHEW AQUILINE, MICHAEL )
SCHMERBECK, GREGORY HESS, and PAUL J. SONGER, )
as Trustees of, and on behalf of, the )
BRICKLAYERS AND ALLIED CRAFTWORKERS )
INTERNATIONAL HEALTH FUND, )
    620 F Street, N.W. )
    Washington, DC 20004 )
    (202) 783-3788, )
     )
    and )
     )
JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES )
BOLAND, TED CHAMP, RAYMOND CHAPMAN, )
VINCENT DELAZZERO, BRUCE DEXTER, JOHN )
FLYNN, EUGENE GEORGE, GREGORY HESS, FRED )
KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, )
SANTO LANZAFAME, DICK LAUBER, WILLIAM )
MCCONNELL, EDWARD NAVARRO, GERALD )
O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK )
ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL )
SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, )
and FRED VAUTOUR )
as Trustees of, and on behalf of, the )
INTERNATIONAL MASONRY INSTITUTE, )
    620 F Street, N.W. )
    Washington, DC  20004 )
    (202) 783-3788, )
     )
     )
           Plaintiffs, )  Civil Action No.

2390621.01



v.                                                          )
                                                           )
MULHERIN ARCHITECTURAL MARBLE &                            )
  GRANITE, INC.,                                           )
    c/o Mark Z. Schraier, Agent for Service of Process     )
    168 Meramec Avenue, 4th Floor                          )
    St. Louis, MO  63105,                                  )
                                                           )
                          Defendant.                       )
                                                           )

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the

Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades

International Pension Fund ("IPF" or "Fund"), the fiduciaries of the Bricklayers and Allied

Craftworkers International Health fund ("IHF"), and the fiduciaries of the International Masonry

Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF, IHF

and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as

amended ("ERISA").  This action arises under the laws of the United States, specifically Section

502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145.  Pursuant to

Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this

Court as to the claims brought on behalf of the IPF, IHF, and IMI.

2. The IPF, IHF and IMI are administered in the District of Columbia.  Venue for

the claims asserted by the IPF, IHF and IMI is conferred on this Court pursuant to

Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

2

(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

## Parties

3.    Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.    The IPF is also authorized to effect collections on behalf of the IHF and IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.    Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Eugene George, Matthew Aquiline, Michael Schmerbeck, Gregory Hess, and Paul J. Songer are Trustees of, and sue on behalf of, the IHF. The IHF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IHF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IHF in their respective capacities as fiduciaries.

6.    Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark

2390621.01

Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

7.    Defendant, Mulherin Architectural Marble & Granite, Inc. is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Missouri.

8.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

### Violation Charged

9.    Mulherin Architectural Marble & Granite, Inc. acting through its authorized agents or officers, executed collective bargaining agreements with the Union. Those collective bargaining agreements are annexed hereto as Exhibits A and B and are hereinafter referred to as the "Agreements."

10.    Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF, IHF and IMI on behalf of covered employees of Defendant.

11.    Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

12.    An examination of Defendant's books and records ("audit") performed by the independent accounting firm of Calibre CPA Group PLLC covering the time period January

4

2001 through December 2003 revealed that Defendant failed to properly submit required reports and contributions for work performed during this time period.

13.    The total of contributions due the IPF, IHF and IMI by Defendant for work performed during the months of January 2001 through April 2003, as determined by the audit, amounts to $9,675.55.

14.    Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF and IMI, interest in the amount of $3,937.01 and an additional computation of interest in the amount of $3,937.01, calculated from the Due Date at the rate of 15 percent per annum have been assessed on such delinquent contributions determined due by the audit.

15.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $21,269.63, which is constituted as follows:

a.  For unpaid contributions in the amount of $9,675.55 payable to the IPF, IHF and IMI for the time period January 2001 through December 2003, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); Collection Procedures);

b.  For interest in the amount of $3,937.01 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

2390621.01

c. For an additional computation of interest in the amount of $3,937.01, assessed on such unpaid contributions, calculated at the rate of 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

d. For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

e. For the costs of conducting the audit in the amount of $3,370.06 (ERISA Section 502(g)(2)(D));

2. In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3. That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF, IHF and IMI and to pay the costs and disbursements of this action.

4. Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated:  February 7, 2008                           By:_____

Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorneys for Plaintiffs

6

2390621.01

BRICKLAYERS AND ALLIED CRAFTWORKERS

INTERNATIONAL UNION OF AMERICA

TILE AND MARBLE SETTERS AND FINISHERS
LOCAL UNION #18 OF MISSOURI

AGREEMENT WITH

TILE AND MARBLE CONTRACTORS ASSOCIATION

ST. LOUIS AND VICINITY


MAY 1, 1998 through APRIL 30, 2001

1

## TABLE OF CONTENTS

Table of Contents .................................................................1-2
Duration ...........................................................................3
Union Recognition ..............................................................3
Management Recognition ....................................................3
Union Security ...................................................................4
Scope of Agreement ...........................................................4
Setters Territorial Jurisdiction .............................................4
Finishers Territorial Jurisdiction ..........................................4
Tile Setter Work .................................................................5
Marble Setter Work ............................................................6
Teamwork .........................................................................6
Regular Work Hours ...........................................................6
Overtime ...........................................................................6
Saturday Make-up Day ........................................................6
Occupied Non-Residential ...................................................7
Holidays ...........................................................................7
Show-up Time ...................................................................7
Mileage Reimbursement ......................................................8
Out-of-Town Meal Allowance ..............................................8
Out-of-Town Motel Allowance .............................................8
Out-of-Town Travel Allowance ............................................9
Parking .............................................................................9
Hiring Preference ...............................................................9
Sub-Contracting .................................................................9
Agreement to Deduct ..........................................................10
Authorization to Deduct ......................................................10
Dues Check-Off .................................................................10
Working Foreman ...............................................................11
Piece Work .......................................................................11
Limitation of Work .............................................................11
Orders and Working Instructions ...........................................11
Equipment .........................................................................11
Epoxy Materials .................................................................12
Maintenance of Equipment...................................................12
Faulty Work ......................................................................12
Personal Appearance ...........................................................12
Maintenance of Skills ..........................................................12

2

Drug Testing .................................................................13
Determination of Contractor ....................................13
Surety Bond .................................................................13
Unemployment Compensation Insurance ...............14
Worker's Compensation Insurance .........................14
Uniformity of Operation ...........................................14
Favored Nation Clause ..............................................14
Arbitration .................................................................15
Preservation of Work ................................................16
Tile & Marble Setter Wages & Benefits ..................17
Tile & Marble Setter Apprentice Program ............18
Tile & Marble Finisher Wages & Benefits ..............18
Grandfather Clause ..................................................19
Tile & Marble Finishers Apprentice Program ......19
Apprentice Fund .......................................................19
Industry Advancement ............................................20
International Masonry Institute ............................20
Federal Wage Control ..............................................20
No Discrimination & General Understanding .......21
Delinquencies ...........................................................21
Traveling Contractors ............................................22
Out-of-Town Contractors ......................................22
Validity of Agreement ............................................23
Index .........................................................................24

3

## AGREEMENT

This Agreement entered into this first day of May, 1998 by and between the TILE & MARBLE CONTRACTORS ASSOCIATION OF GREATER ST. LOUIS on behalf of its member Tile & Marble Contractors of St. Louis and Vicinity, and such other contractors who are signatory hereto and such other contractors who may become signatory hereto (hereinafter referred to as the Employer or Contractor) and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL #18 OF MISSOURI, AFL-CIO (hereinafter referred to as the Union).

## ARTICLE I

## DURATION - TERMINATION -AMENDMENT

This Agreement shall be effective commencing May 1, 1998 and shall continue in full force to and including April 30, 2001 and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement, in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter.  The parties may at any time mutually agree to change or amend any part of this Agreement and such change or amendment shall not affect the continuing nature of this Agreement. Such change or amendment shall not be effective however until reduced to writing and signed by both parties.

## ARTICLE II

## MANAGEMENT - UNION RECOGNITION AND SECURITY

Section 1 - Union Recognition The employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in classification of work falling within the jurisdiction of the Union, as defined in Article III of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

Section 2 - Management Recognition The Union hereby recognizes and acknowledges the Tile & Marble Contractors Association of St. Louis as the representative of Employers and acknowledges that the maintenance of job site discipline is the responsibility of Employers, and that except as herein provided Employers shall have the right to hire, suspend, discipline or fire for just cause, direct the work force and in general operate their business in accordance with their judgment.

4

Section 3 - <u>Union Security</u> No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employees, provided that the Union has given the employee four (4) days notice that his/her obligation to make payment has not been met and that his/her delinquency renders him/her liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union; (a) if he/she has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he/she has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

## ARTICLE III

## WORK JURISDICTION

Section 1 - <u>Scope of Agreement</u> This Agreement covers all Tile Layer, Marble Setter, and Tile & Marble Finisher employees of the Employer engaged in the setting, slabbling or installing of all classes of tile or marble, whether for interior or exterior purposes, in any public or private building located anywhere within the territorial jurisdiction of the Union.

Section 2a <u>Tile & Marble Setters Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri; Clark, Lewis, Marion, Ralls, Pike, Lincoln, Warren, St.Charles, St.Louis, Franklin, Jefferson, Crawford, and including the city of St.Louis.

Section 2b <u>Tile & Marble Finishers Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri: Scotland, Clark, Knox, Lewis, Shelby, Marion, Monroe, Ralls, Audrain, Pike, Callaway, Montgomery, Lincoln, Warren, St.Charles, St.Louis, Osage, Gasconade, Franklin, Jefferson, Maries, Pulaski, Phelps, Crawford, Dent, Washington, St. Francis, St. Genevieve, Perry, Texas, Iron, Madison, Cape Girardeau, Bollinger, Shannon, Reynolds, Wayne, Howell, Oregon, Carter, Ripley, Butler, Stoddard, Scott, Mississippi, New Madrid, Dunklin, Boone and Pemiscot. This includes the City of St. Louis and the following counties in the State of Illinois: Madison, St. Clair, Bond, Fayette, Jefferson, Franklin, Hamilton, Jackson, Saline, Wayne, Williamson, Clinton, Marion, Monroe, Randolph, Perry, Washington, Union, Alexander, Hardin and Gallatin

Section 2c In the event the territorial or trade jurisdiction of the Union shall be extended during the term hereof, this Agreement shall cover such extensions.

5

Section 3 Tile Setter Work is defined as :

(a) The laying, cutting, or setting of all tile, and tile substitutes, where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundations or material that may be required to properly set and complete such work.

(b) The application of a coat or coats of mortar, prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the mortar coat is wet or dry at the time the tile is applied to it.

(c) The setting of all tile bonded with mortar, where the bed is floated, screeded, slabbed or buttered and where joints are not filled in the same operation.

(d) The setting of all tile by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(e) The setting of tile as herein provided shall include the installation of underlayment, backer-board, waterproofing membrane, accessories and the insertion of decorative tile inserts in other materials.

(f) The setting, sealing, caulking, and installation of prefabricated tile systems.

Section 4 "Tile" is herein defined as the following products:
  (a) All burned clay products, as used in the Tile Industry either glazed or unglazed.
  (b) All composition materials, marble tiles, glass mosaics and all substitute materials for tile made in the tile-like units.
  (c) All mixtures in tile-like form of cement, metals, plastics and other materials, that are made for and intended for use as a finished floor and all places where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

Section 5 Marble Setter Work is defined as: Including, but not limited to the handling, erection or installation of interior Stone, Marble, Slate, Granite, Quartzite, Limestone, Travertine, Art Marble, Serpentine, Alberence Stone, Blue Stone or other Stone.  Meaning as to Stone any foreign or domestic materials as specified and used in building interiors and customarily known as stone in the trade: Carrora, Salonyx, Vitrolite, and similar opaque glass and the laying of all Marble tile, Terrazzo tile, Slate tile, or any other material that may be used as substitutes for any of the aforementioned materials and which are installed in a similar manner.  Also any of the aforementioned materials where used on exterior work up to and including two (2) inches of thickness

6

Section 6 <u>Tile & Marble Finishers Work</u> is defined as:

(a) The handling, at the building site, all sand, cement, tile, marble or stone as defined above and all other materials that may be used and installed by tile layer, or marble mason member of Local #18 MO.

(b) The grouting, cleaning, sealing, and mixing on the job site, and all other work as required in assisting the setter.

Section 7 <u>Teamwork</u> is essential for the improvement of the Tile & Marble Industry. Working together as a team will achieve a high standard of workmanship and quality. All members of Local #18 MO must work together in a harmonious way to combat the non-union and open shop movement.

<u>ARTICLE IV</u>

<u>HOURS OF WORK - OVERTIME AND HOLIDAYS</u>

Section 1 <u>Hours</u> The standard work day shall consist of eight (8) hours of work between the hours of 8:00 am and 4:30 PM with a 30 minute unpaid lunch hour occurring in the middle of the shift. The standard work week shall consist of five standard work days commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

Section 2 <u>Overtime</u> All time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturdays, shall be paid for at the rate of time and one-half (1 1/2) the hourly base wage rate in effect. All time worked on Sundays and on the holidays specified in Section 5 of Article IV shall be paid for at the rate of double the hourly base wage rate in effect.

Section 3 <u>Saturday Make-Up Day</u> All work done on Saturday will be done at time and one-half (1 1/2) unless the employer and employee mutually agree that Saturday shall be used as a make-up day. The employee shall not be disciplined or discriminated against for failing to agree to use Saturday as a make-up day. If an employee should lose one or more days in a work week and use Saturday as a make-up day the pay shall be at the regular hourly base wage rate and benefits. Reasons to use Saturday as a make-up day shall be:
1. Absence during the week was at the employees request
2. Shortened work week due to acts of God
3. Job site circumstances beyond the control of the tile contractor caused the employee to miss a day's work on that job.

7

Section 4 <u>Occupied Nonresidential Work</u> All occupied nonresidential work performed before 8:00 am and after 4:30 PM Monday through Friday will be compensated for at a premium rate of ten percent (10%) per hour above scale provided the premium hours do not bring total hours worked to more than forty (40) hours per week.

Section 5 <u>Holidays</u> The Employer agrees to recognize the following holidays.  If the holiday falls on Sunday it shall be recognized on the following Monday.  If the holiday falls on a Saturday it shall be recognized as a Saturday only holiday.
    1. New Year's Day
    2. Memorial Day
    3. Independence Day
    4. Labor Day
    5. Veterans Day
    6. Thanksgiving Day
    7. Christmas Day

Section 6 <u>Show-up Time</u> When an employee is requested by an employer and reports to work pursuant to said request the employee is entitled to a minimum of two (2) hours show-up time at regular wage except where something unusual and beyond the control of the Employer occurs, which makes it impossible for the employee to work between the time said request was made and the time the employee reports for work.

8

## ARTICLE V
## TRANSPORTATION EXPENSES

Section 1 <u>Reimbursement</u> Employees shall be reimbursed for transportation and room and board on out of town jobs in the following manner:

Mileage Zones: Air miles starting from I-270 and 40/64

       0 to 40 miles - no reimbursement
       41 to 50 miles - $6.00 each round trip
       51 to 60 miles - $9.00 each round trip

Section 1A <u>Out of Town Meal Allowance</u> 61 to 150 miles.  Meal rate to be paid for duration of the job based on five (5) days per week as follows:

       May 1, 1998 $21.00 per day
       May 1, 1999 $21.00 per day
       May 1, 2000 $21.00 per day

151 miles and over - meal rates to be paid for duration of the job based on seven (7) days per week as follows:

       May 1, 1998 $21.00 per day
       May 1, 1999 $21.00 per day
       May 1, 2000 $21.00 per day

Section 1B <u>Out of Town Motel Allowance</u> 61-150 miles Employer agrees to pay actual cost for motel room based on double occupancy for five (5) days per week for duration of the job. This cost to be paid as an expense allowance.  The allowance shall be $35.00 per night or the rate plus tax quoted by <u>Super 8 Motels</u>, whichever is greater.

150 miles and over - Employer agrees to pay actual cost for motel room based on double occupancy for seven (7) days per week for duration of the job. This cost to be paid as an expense allowance.  The allowance shall be $35.00 per night or the rate plus tax quoted by <u>Super 8 Motels</u>, whichever is greater.

9

Section 1C - <u>Travel Allowance</u> 61 miles and over.  Actual travel time to and from job site based on 60 mph average shall be paid for one round trip.  One round trip bus or train fare to be paid in addition to above.

It being understood, should an employee be removed from the job site before the completion of said job, and employee returning to said job site, shall be entitled to said meal rate and bus or train fare plus travel time for another round trip.

It being understood that should an employee be sent to a job site by himself/herself, the employer shall pay the full room rate and the meal rate shall prevail for each of the three (3) years covering this working agreement.

Section 2 It is further understood and agreed that when an employee's automobile is used for transportation as set out in Section 1, only the owner of said automobile shall be paid the operating expenses set out above. Employees are to use their automobiles at their own discretion.

Section 3 <u>Parking</u> Contractors/Employers agree to pay parking based on actual expenses upon the presentation of paid receipt.

ARTICLE VI

<u>HIRING PREFERENCE</u>

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement.  Layoffs shall be in reverse order of hire except where it is necessary to retain employees with certain skills in order to complete the project.

ARTICLE VII

<u>SUBCONTRACTING</u>

Section 1 The employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

10

Section 2 All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE VIII

## CHECK-OFF AUTHORIZATION

Section 1 Agreement to Deduct The Employer agrees to deduct and withhold from the pay due each employee covered by this Agreement a sum equal to sixty cents (.60) per hour for all hours worked, provided the Employer has received written authorization from the employee, and to remit said sum to the Union.

Section 2 Authorization to Deduct The signed authorization granting the Employer the authority to deduct the amount stated in Section 1 shall read as follows:

I, the undersigned, hereby verify that I am a member in good standing of Bricklayers and Allied Craftworkers, Local #18 Mo AFL-CIO, and I authorize you to withhold from my weekly pay check a sum equal to sixty cents (.60) per hour for all hours worked by me and to remit said amount to Local #18 MO. The undersigned further agrees and understands that this statement shall constitute and be a full and complete release for the aforesaid deduction from my weekly pay check when paid to Local #18 MO. This authorization shall be irrevocable for a period of one (1) year from the date hereof or the termination date of the applicable collective bargaining agreement whichever first occurs and shall be renewable for successive one (1) year periods unless I give written notice to the Employer and the Union at least thirty (30) days preceding the expiration of each period of irrevocability.

------------------------------      -------------------------------------------------
date                                Signature

Section 3 BAC I.U. Dues Check-off The Employer agrees to deduct an amount of one percent (1%) of gross total package for each hour worked from the pay of each employee who is a union member and who executes a voluntary check-off authorization form for the Bricklayers & Allied Craftworkers. Deductions shall be in the amount and at the intervals specified on the check-off authorization form The Employer agrees to transmit BAC I.U. dues deductions to the International Union of Bricklayers and Allied Craftworkers. The transmittals shall occur on a MONTHLY basis and shall be accompanied by a list of the names of those employees for whom BAC I.U. dues deductions have been made and the amount deducted for each employee. The deduction shall continue for the life of this Agreement for those employees who sign BAC I.U. dues authorization forms unless they are revoked individually and in writing.

11

### ARTICLE IX

### WORKING RULES

Section 1 <u>Working Foreman</u> A working foreman shall be appointed on all jobs where eight or more union members are employed and his/her wages shall be one dollar fifty cents (1.50) per hour over and above the prevailing wage rate for journeymen setters.

Section 2 <u>Prohibition of Piece Work</u> Employers shall not bargain or contract with each other to lay a designated number of feet of tile for the day's work, nor shall they bargain or contract that a mechanic do a certain piece of work in a designated time. This bargaining or contraction shall be regarded as piece work which is not within the contemplation of the parties signing this Agreement and will be deemed by the Union to be a material breach of the Agreement; in which event the Union may take any action it deems necessary not withstanding any other provision of the Agreement.

Section 3 <u>No Limitation of Work</u> There shall be no limitation of the amount of work an employee shall perform during his working day or as to the use of machinery or tools. If an employee leaves early without permission and claims a full day worked, the employee will be docked for the time not worked and will be subject to disciplinary action by the contractor up to and including termination for cause.

Section 4 <u>Orders and Instructions</u> All orders and instructions to employees, including discharging them, shall be given by the Employer or Superintendent, unless the working foreman is specifically instructed to do so.

Section 5 <u>Proper Working Instructions</u> The Employer shall furnish to the Local #18 member proper working instructions, covering all work to be done on any and all jobs. On a complicated piece of work a setting plan shall accompany working instructions.

Section 6 <u>Working Equipment</u> All employees must be supplied with the proper working equipment such as: Soaking tub, straight edges, float strips, mixing boxes, wheelbarrows, shovels, all cutting wheels, etc., to be furnished and delivered on the job by the Employer and it is further agreed that the Employer may have the option as to whether he/she will furnish power tools and excessive equipment, such as quarry tile cutters, large chisels, etc. However it is distinctly understood that the employee does not at any time have to furnish such equipment on jobs where the use of excessive tools such as large or small power tools, chisels, etc. are required to properly do the job. It being understood that all employees shall equip themselves with proper hand tools. That the employee **MUST** INSPECT ALL EQUIPMENT DAILY AND **MUST** NOTIFY THE CONTRACTOR IMMEDIATELY IF ANY OF THE EQUIPMENT IS NOT IN PROPER SAFE CONDITION.

12

Section 7 <u>Epoxy Materials</u> All work with epoxies to be in strict accordance with manufacturer's written instructions and Local Health Department Regulations. The employer shall supply all necessary equipment such as gloves and floats. The Union shall reserve the right to remove all "Employees" from any apoxie or epoxy job where the above is not strictly adhered to. This shall include the right to notify the City and State Health Departments of flagrant violations of health hazards.

Section 8 <u>Maintenance of Equipment</u> Employers understand that OSHA provides for certain responsibilities for the proper use of equipment and that they will provide such equipment in a manner consistent with safety rules and obligations. The employee agrees to exercise prudent responsibility for the equipment furnished them by the employer including the proper care, maintenance and cleaning. Failure to do so may result in disciplinary action up to and including dismissal. Such tools, equipment and supplies will be used only in performance of work for their employer. When an employer requests an employee to return company tools in his/her possession the Union will cooperate to expedite said return.

Section 9 <u>Faulty Work</u> It is agreed that all materials and workmanship in connection with any installation shall be of such standards of quality so as not to destroy the true principles of the trade. In the event of a disagreement regarding the quality of a particular installation a committee composed of an equal number from the Union and Contractors shall inspect the work and render a decision which shall be final and binding upon all parties concerned. If the complaint is found to be justified and the employee is at fault the member shall be required to repair the work on their own time. The employer shall supply the materials.

Section 10 <u>Personal Appearance</u> The employer and union agree that the tile & marble trade is a service industry and personal appearance presents an important visual image to the customer. Qualified, professional union journeyworkers should present a neat, clean well-groomed appearance. Proper attire will be worn at all times. In the interest of safety and appearance the following general guidelines will be followed for the benefits of both the union and the employer:
   A. Clean, neat, well-groomed appearance
   B. No shorts
   C. No smoking in occupied residence or public place where prohibited
   D. Must wear safety equipment as required

Section 11 <u>Maintenance of Skills</u> Because of the rapid development of new materials and methods of installation in the Tile & Marble Industry both management and union recognize the need for continuing education in order to stay current with the technical advances of the Industry. Therefore the journeyman level Tile Setter, Marble Setter, and Tile & Marble Finisher agree to participate in training classes and informational seminars as provided by the training school and the Tile & Marble Contractors.

13

Section 12 <u>Drug Testing</u> The Employer may require employees to submit to testing for alcohol or controlled substances to the extent and in the manner required by applicable law or by a project owner or in any reasonable manner for the purpose of promoting safety in the following circumstances; When there is reasonable cause to believe that an employee has used or is under the influence of such substances during working hours, when an employee has been involved in an accident involving personal injury or property damage on the job, or at random providing that an employer may not require random testing of any one employee more than twice in any calendar year.  Positive test results indicating the presence of non-prescribed marijuana, cocaine, opiates, amphetamines or phencyclidine in any quantity or blood alcohol of 10/100th of one percent or more by weight or failure to submit to the drug and alcohol screen test may result in disciplinary action up to and including dismissal.

In order to enforce this policy it may be necessary to require appropriate biological specimens from both job applicants and/or current employees.  When this activity is required all testing will be conducted by a company approved medical testing laboratory that has been licensed by the state.  The company will bear all cost for drug and alcohol testing of employees.

<u>ARTICLE X</u>

<u>EMPLOYER - CONTRACTOR</u>

Section 1 <u>Determination of Status of Contractor</u> A key officer employed by a company or corporation and a member of Local #18 MO may elect to pay his/her check off dues (Article VIII, Section 1) plus a flat fee of forty dollars ($40) per month with no benefit package.  This will entitle that person to work with the tools.  If however the company or corporation hires three or more members of Local #18 MO he/she must lay down the tools.

If he/she elects to pay into the benefit package he/she will pay a minimum of one hundred twenty (120) hours per month. He/she will then be allowed to work with the tools.

If he/she carries a Union Card he/she will be allowed to attend union meetings but by IU law will be restricted from holding office or having an individual vote.

Section 2 <u>Surety Bond</u> Any new contractor becoming a party to this Agreement after its effective date shall secure and maintain a surety bond in the minimum amount of ten thousand dollars ($10,000) to guarantee payment of all wages, fringes and contributions provided for herein and shall furnish to the union evidence of the procurement and maintenance of bond in such amount for a period of one (1) year.  Any contractor failing to pay wages or fringe benefits at the proper time provided herein will secure and maintain such a surety bond.

14

Section 3 <u>Unemployment Compensation Insurance</u> By the execution of this Agreement the Employer hereby agrees that he/she shall be covered under the laws of the State of Missouri relating to unemployment compensation insurance and the Employer shall provide coverage for all employees covered by this Agreement.  The Employer further agrees to post account numbers indicating such coverage with the Joint Arbitration Board.

Section 4 <u>Worker's Compensation Insurance</u> All employees employed by an Employer under this Agreement are to be protected by Worker's Compensation Insurance as required under the laws of the State in which said employees are employed.  The Employer shall furnish to the Joint Arbitration Board a certificate from the insurance company stating that such insurance has been provided.  This certificate shall specify the date when such compensation insurance expires.  The Employer agrees that such compensation insurance shall be maintained by him/her throughout the life of this Agreement.  If an Employer fails to obtain Worker's Compensation Insurance the Union is obligated to take economic action against said employer including but not limited to removal of employees from the job, strike, picket or any other lawful action.  Before any work is undertaken by employees the above mentioned certificate must be on file with the Joint Arbitration Board.

The policies are not cancelable or subject to reduction in coverage until ten (10) days after receipt by the insured and the Union of written notice as evidenced by return receipt.

Section 5 <u>Uniformity of Operation</u> Any Employer operating in this jurisdiction shall work as provided in this Agreement and under which all other Employers, parties hereto now operate with this jurisdiction.

Section 6 <u>Most Favored Nation Clause</u> The Union agrees that if it should enter into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the marble, ceramic or quarry tile market or certain geographic areas, those same terms and conditions of employment will be made available to all Employers on the specified projects, particular segments of the market or in those geographic areas covered.

15

## ARTICLE XI

## NO STRIKE/NO LOCKOUT
## AND
## ARBITRATION

Section 1 - There shall be no strikes or lockouts over a dispute concerning an alleged breach of this Agreement during its term until the grievance procedures of this Article have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other fund contributions that have been established through bonafide collective bargaining.

Section 2 - All questions or differences arising between the parties to this Agreement relating to its interpretation or enforcement or the subject matter thereof shall be referred to a Joint Arbitration Board for determination or settlement. Pending a decision of the Joint Arbitration Board the status quo shall exist. If either party refuses to abide by the Award then the injured party will be free to take whatever economic action it deems necessary.

Section 3 <u>Joint Arbitration Board</u>   This Joint Arbitration Board shall be composed of ten (10) members. Five (5) to be employers, signers of this Agreement and five (5) to be members of Local #18 MO. The employer members shall be selected by the employers at a meeting of their organization and the union members to be elected by their union in the regular manner. Any decisions made by a majority vote of this committee shall be binding upon the parties signatory to this Agreement.

Grievance Procedures are as follows:

No grievance shall be recognized unless it is called to the attention of the employer by the union or to the attention of the union by the employer within five (5) days after the alleged violation is committed or discovered.

Step 1: The employee and the employer try to settle the grievance. This attempt to settle shall be done within five (5) days excluding Saturday, Sunday and legal holiday.

Step 2: If step one does not settle the grievance it shall be referred to the Business Manager. The manager shall than meet with the employer and the employee and attempt to settle the grievance. They shall meet within three (3) days excluding Saturday, Sunday and legal holidays.

16

Step 3: If step two does not settle the grievance it shall be referred to the Joint Arbitration Board within three (3) days excluding Saturday, Sunday and legal holidays. The Joint Arbitration Board shall have five (5) days to reach a decision.

Step 4: If a decision is not reached the Joint Arbitration Board shall select an impartial arbitrator to review with the board all evidence submitted relating to the grievance and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an arbitrator the matter then is referred to the American Arbitration Association.

All expenses incurred by a special arbitration shall be borne jointly by both parties to this Agreement, (Union and Contractor Association). Any decision reached during the grievance procedures shall be final and binding on all parties but shall not be precedent setting.

## ARTICLE XII

## PRESERVATION OF WORK

Section 1 - in order to protect and preserve for the employees covered by this Agreement all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project under its own name or under the name of another, as a corporation, company, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

Section 2 - All charges of violations of Section 1 of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XI of this Agreement. As a remedy for violations of this Section the arbitrator (or arbitration body ) provided for in Article XI is empowered at the request of the Union, to require an Employer to 1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations and 2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section, nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

17

Section 3 - If, as a result of violations of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section 2 above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

ARTICLE XIII

WAGES AND BENEFITS
TILE & MARBLE SETTERS
RATES OF PAY, WELFARE, PENSIONS

Section 1 Tile & Marble Setters Rates of Pay
(a) Effective May 1, 1998 through April 30, 1999 total wages , including fringe-benefits increases, will be $28.02 the breakdown would be as follows: May 1, 1998 - $1.00 per hour increase, .80 cents increase hourly wage, .10 cents increase Health & Welfare, .10 cents increase Local pension. Wages as of May 1, 1998 - $21.47 per hour.

(b) Effective May 1, 1999 - $1.00 per hour wage increase. Said increase to be in wages or fringe benefits at the Union's options.

(c) Effective May 1, 2000 - $1.00 per hour wage increase. Said increase to be in wages or fringe benefits at the Union's options.

(d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

Section 2 Health & Welfare The Employer shall contribute the amount of $3.20 per hour for each hour worked by all Tile & Marble Setter members of Local #18 MO including all apprentices per Section 5 of Article XIII as of May 1, 1998 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 3 Local Pension Fund Tile & Marble Setter The Employer shall make contributions in the amount of $2.23 per hour for each hour worked by all Tile & Marble Setter members of Local # 18 Mo including all apprentices per Section 5 of Article XIII into the Ceramic Tile & Marble Masons Pension Fund as of May 1, 1998. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due. Pension will be 10% of base wages on future increases rounded to nearest cent.

18

Section 4 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of .90 cents per hour for each hour worked by all Tile & Marble Setters as of May 1, 1998 including all apprentices per Section 5 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 5 <u>Tile & Marble Setter Apprentice Program</u>
The rates of pay for Setter Apprentice is as follows:
a) 1st three months - 50% of journeyman wages (without Health & Welfare or Pension Contributions)
b) 2nd three months - 55% of journeyman wages (with Health & Welfare and no Pension Contributions)
c) 2nd six months   - 65% of journeyman wages (with Health & Welfare and Pension Contributions)
d) 3rd six months   - 70% of journeyman wage
e) 4th six months   - 75% of journeyman wage
f) 5th six months   - 85% of journeyman wage
g) 6th six months   - 90% of journeyman wage

In all of the above categories all International & Local dues are to be withheld and all contributions to the Industry Advancement, International Masonry Institute and Apprentice Training Fund shall be paid per the Collective Bargaining Agreement.

<u>WAGES AND BENEFITS</u>
<u>TILE & MARBLE FINISHERS</u>
<u>RATES OF PAY, WELFARE, PENSIONS</u>

Section 6 <u>Tile & Marble Finishers Rates of Pay</u>

a) Effective May 1, 1998 through April 30, 1999 total wages (including fringe benefits increases) will be $25.82 The breakdown would be as follows: May 1, 1998 .85 cents per hour increase .60 cents increase hourly wage, .10 cents increase Health & Welfare .15 cents increase Local pension. Wages as of May 1, 1998 - $19.68 per hour.

b) Effective May 1, 1999 .85 cents per hour wage increase. Said increase to be in wages or fringe benefits at the Union's option.

c) Effective May 1, 2000 .85 cents per hour wage increase. Said increase to be in wages or fringe benefits at the Union's option.

d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

19

Section 7 <u>Health & Welfare</u> The Employer shall contribute the amount of $3.20 per hour for each hour worked by all Tile & Marble Finisher members of Local #18 MO including all apprentices per Section 11 of Article XIII as of May 1, 1998 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 8 <u>Local Pension Fund Tile & Marble Finisher</u> The Employer shall make contributions in the amount of $2.32 per hour for each hour worked by all Tile & Marble Finishers members of Local #18 MO including all apprentices per Section 11 of Article XIII into the Tile & Marble Finishers Pension Fund as of May 1, 1998. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 9 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of .40 cents per hour for each hour worked by all Tile & Marble Finishers as of May 1, 1998 including all apprentices per section 11 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 10 <u>Grandfather Clause</u> Protecting all finishers who were members before August 1, 1989. The "Grandfather" Finisher will get a percentage raise based on all new negotiations.

Section 11a <u>Finisher Apprentice</u>. All new Finishers will go into an apprentice program. First year the apprentice will attend class. The remaining two years will be on the job training -no classes. At the end of three (3) years Finishers wages will be 85% of Setter's wages.

Section 11b <u>The Finisher Apprentice Program</u>: The rates of pay for the Finisher's Apprentice shall start at 50% of Journeyman Setters wages.
1st - 3 months - 50% No Health & Welfare or Pension
2nd - 3 months - 55% with Health & Welfare no Pension
2nd - 6 months - 60% with full Health & Welfare & Pension
3rd - 6 months - 65% with full Health & Welfare & Pension
4th - 6 months - 70% with full Health & Welfare & Pension
5th - 6 months - 75% with full Health & Welfare & Pension
6th - 6 months - 80% with full Health & Welfare & Pension

Section 12 <u>Apprentice Training Fund</u> The Employer shall contribute the amount of eight (.08) cents for each hour worked by each employee covered by this Agreement to the Tile & Marble Apprentice Fund. In the event it is determined by the Joint Arbitration Board that a greater amount is required to effectively operate the training program, the Employer shall increase the contribution to the Apprenticeship Fund in the amount established by the Joint Arbitration Board. Such increase in contribution shall come from the Union allocation of compensation increase provided for in Sections 1 and 6.

20

Section 13 <u>Industry Advancement</u> All Contractors/employers signatory to this Agreement will contribute two (.02) cents per hour for each working member of Local #18 MO employed by the contractor/employer to a fund for industry advancement. All contractors signatory to this Agreement will be considered members in good standing of the Tile & Marble Contractors Association of Greater St. Louis and will be able to hold office and vote.

Section 14 <u>International Masonry Institute</u> The parties to this Agreement recognize the need for effective apprenticeship and training which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the IMI is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in this program area in an effective manner of coordinating through a single regional/international system. With this principle in mind, the parties agree as follows: effective May 1, 1998 the contribution to the International Masonry Institute shall be twelve (.12) cents per hour for each Tile & Marble Setter and twelve (.12) cents per hour for each Tile & Marble Finisher for which a covered employee receives pay.

Section 15 <u>Wage Information</u> All members of Local #18 MO shall be paid at least once a week. Friday shall be payday and that pay shall include all time up to the previous Tuesday night. Pay shall be in law money of the United States. They shall be paid not later than 4:30 PM on local work. Employee wage payment will show amount of gross pay and itemized deductions, together with dates of the pay period covered, the name of the Company, the name of the employee and total number of both regular and overtime hours worked and upon request, copies will be supplied to the funds and/or the Union office by the Employer.

Section 16 - If the contractor/employer elects to mail the pay; and should any employee not receive his/her pay at his/her residence on the Friday payday, the employer will be charged "waiting time". The limit to be two (2) days pay which will begin at 8:am and end at 4:30 PM on Saturday and Sunday. No claim will be allowed if the postmark on the letter containing the pay is Thursday PM before payday. If however, the employee is required to pick up his/her check from the shop on Saturday he/she will be paid an additional two (2) hours pay at base pay.

Section 17 -<u>Federal Wage Control</u> If Federal Wage Controls are imposed for the Tile & Marble section of the construction industry or the construction industry in general this local union shall therefore receive in addition to the wages and fringe benefit fund contributions provided for in this Agreement any amount previously eliminated by said Controls if wage controls were in effect less than one (1) year. If wage control is in effect for more than one (1) year then any wage increase during that one year period would be waived. However, if that one (1) year period laps two raises, only the first raise would be waived.

21

## ARTICLE XIV
## NO DISCRIMINATION AND GENERAL UNDERSTANDING

Section 1 <u>No Discrimination</u> The Employer(s) and the Union mutually recognize the need for implementing equal opportunity to all qualified employees and applicants for employment without regard to race, color, creed, sex, age or national origin. There shall be no discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, union membership, union activity or status as a disabled veteran, or a veteran of the Vietnam Era except where age is a bonafide occupational qualification or handicap is a bonafide occupational disqualification.

Section 2 <u>Delinquencies</u> The Employer further agrees to keep true and accurate records of his/her payroll and expenses paid to his/her employees covered by this Agreement and the employer shall make them accessible for audit by the Trustees of any existing Trust Fund or their appointee or disinterested representatives . The cost of such representative shall be paid by the Trust Fund to which contributions are due. If such audit by the disinterested party discloses errors in the bookkeeping of the employer then a cost of the audit shall be paid by the employer being investigated.

Upon notice to the Union from the Trustees of a benefit fund to which the employer is obligated to make contributions under this Agreement that the employer is delinquent in making contributions to such benefit fund, the Union shall be entitled to take all recourse, including strike action for collection of the delinquency and to protect against its reoccurrence any other provision of this Agreement notwithstanding.
Notice from the Trustees to the Union of an employer's delinquency status shall be conclusive and reliance thereon by the Union shall not be accountable. Neither the issue of delinquency in contributions nor the extent thereof nor action taken by the Union to compel collection shall be subject to the grievance and arbitration provisions of this Agreement.
In the event the Employer is delinquent in his/her contributions to the Funds and it becomes necessary for the Trustees of said funds to employ an attorney for the purpose of collecting delinquencies and any penalties, the Employer shall be responsible for and required to pay any reasonable attorney's fees and other costs incurred in the collection of said monies. In the further event the Employer is delinquent in his/her contributions to said Funds, the Union shall deem such delinquency to be a material breach of the Agreement and shall have the right to take economic action against said Employer including, but not limited to removal of the employees from the job, strike, picket, forfeiture of Surety Bond or institution of Surety Bond, (Article X, Section 2) or any other lawful economic action

Section 3 In the event the Joint Arbitration Board approves a different and more efficient method of processing the check-off and payments of contributions such shall be implemented and shall replace all existing methods in accordance with said Board's instructions.

22

Section 4 <u>Traveling Contractors</u> When the employer has any work specified in Article III of this Agreement to be performed outside of the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the employer agrees to abide by the full terms and conditions of the agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article XIII of this Agreement but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the job site Local Agreement. The employer shall in all other matters be governed by the provisions established in the job site local. Where there is no local agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

Section 5 <u>Out-Of-Town Contractors</u> Securing work in the jurisdiction of Local #18 MO may send one key person to such work, (one Tile Setter, or one Marble Mason); in addition, the out-of-town contractor may also send one (1) key person as a Finisher. If additional Tile Setters, Marble Masons or Finishers are needed for the job they must come from Local #18 MO. If Local #18 MO has no members available for the job, then the out-of-town contractors may bring in his/her employees from his/her home local. Local #18 MO must be notified forty-eight (48) hours in advance of start of job.

23

## ARTICLE XV

## SEVERABILITY

Section 1 <u>Validity of Agreement</u> In the event any Federal or State Law is held to invalidate any Article, Section, Clause, or Provision of this Agreement, said Article, Section, Clause or Provision shall be stricken from the Agreement and the balance and remainder of this Agreement shall remain in full force and effect.

The parties shall meet forthwith for the purpose of negotiating by amendment or otherwise any Article, Section, Clause or Provision which may be held to be illegal pursuant to a Federal or State law by a final court decision interpreting such law.

## AGREEMENT EFFECTIVE MAY 1, 1998 THRU APRIL 30, 2001

BAC LOCAL #18MO

TILE & MARBLE
CONTRACTORS ASSOCIATION
ST. LOUIS & VICINITY

### UNION

### EMPLOYER

name _9/21/98_ date

name _9-9-98_ date

Name of Company:--------------------------------------------------------------

Signature and Title:-------------------------------------------------------------

Company Address:-----------------------------------------------------------

Telephone:-------------------------------------------

Date:-------------------------------------------

23
ARTICLE XV

SEVERABILITY

Section 1 <u>Validity of Agreement</u> In the event any Federal or State Law is held to invalidate any Article, Section, Clause, or Provision of this Agreement, said Article, Section, Clause or Provision shall be stricken from the Agreement and the balance and remainder of this Agreement shall remain in full force and effect.

The parties shall meet forthwith for the purpose of negotiating by amendment or otherwise any Article, Section, Clause or Provision which may be held to be illegal pursuant to a Federal or State law by a final court decision interpreting such law.

<u>AGREEMENT EFFECTIVE MAY 1, 1998 through APRIL 30, 2001</u>

TILE & MARBLE
CONTRACTORS ASSOCIATION
ST.LOUIS & VICINITY

<u>BAC LOCAL #18 MO</u>

**UNION**
Name                                    Date

**EMPLOYER**
Name                                    Date
_Mulherin Marble & Granite, Inc._
_Harold Mulherin_

Name of Company: _Mulherin Marble & Granite, Inc._

Signature and Title: _Harold Mulherin        Pres_

Company Address: _9A Acgana Ct. St. Peters, Mo 63376._

Telephone: _( 314 ) 441 - 3533_

Date: _1 - 28 - 99_

BRICKLAYERS AND ALLIED CRAFTWORKERS

INTERNATIONAL UNION OF AMERICA

TILE AND MARBLE SETTERS AND FINISHERS
LOCAL UNION #18 OF MISSOURI

AGREEMENT WITH

TILE AND MARBLE CONTRACTORS ASSOCIATION

ST. LOUIS AND VICINITY

MAY 1, 2001 through APRIL 30, 2004

1

## TABLE OF CONTENTS

Table of Contents .................................................................1-2
Duration ....................................................................3
Union Recognition .........................................................3
Management Recognition ..................................................3
Union Security .............................................................4
Scope of Agreement .......................................................4
Setters Territorial Jurisdiction .............................................4
Finishers Territorial Jurisdiction ..........................................4
Tile Setter Work ...........................................................5
Marble Setter Work .......................................................6
Teamwork .................................................................6
Regular Work Hours ......................................................6
Overtime ...................................................................6
Saturday Make-up Day ...................................................6
Occupied Non-Residential ................................................7
Holidays ...................................................................7
Show-up Time .............................................................7
Mileage Reimbursement .................................................8
Out-of-Town Meal Allowance ...........................................8
Out-of-Town Motel Allowance ..........................................8
Out-of-Town Travel Allowance ..........................................9
Parking ....................................................................9
Hiring Preference .........................................................9
Sub-Contracting ..........................................................9
Agreement to Deduct ....................................................10
Authorization to Deduct .................................................10
Dues Check-Off ..........................................................10
Working Foreman ........................................................11
Piece Work ...............................................................11
Limitation of Work .......................................................11
Orders and Working Instructions .......................................11
Equipment ................................................................11
Epoxy Materials ..........................................................12
Maintenance of Equipment..............................................12
Faulty Work ..............................................................12
Personal Appearance ....................................................12
Maintenance of Skills ....................................................12

2

Drug Testing ...................................................................13
Determination of Contractor ...............................................13
Surety Bond ...................................................................13
Unemployment Compensation Insurance ...............................14
Worker's Compensation Insurance ......................................14
Uniformity of Operation ...................................................14
Favored Nation Clause ....................................................14
Arbitration ...................................................................15
Preservation of Work .......................................................16
Tile & Marble Setter Wages & Benefits ...............................17
Tile & Marble Setter Apprentice Program .............................18
Tile & Marble Finisher Wages & Benefits .............................18
Grandfather Clause .........................................................19
Tile & Marble Finishers Apprentice Program ..........................19
Apprentice Fund .............................................................19
Industry Advancement ......................................................20
International Masonry Institute ...........................................20
Federal Wage Control .......................................................20
No Discrimination & General Understanding ...........................21
Delinquencies ................................................................21
Traveling Contractors .......................................................22
Out-of-Town Contractors ..................................................22
Validity of Agreement ......................................................23
Index .........................................................................24

3

## AGREEMENT

This Agreement entered into this first day of May, 2001 by and between the TILE & MARBLE CONTRACTORS ASSOCIATION OF GREATER ST. LOUIS on behalf of its member Tile & Marble Contractors of St. Louis and Vicinity, and such other contractors who are signatory hereto and such other contractors who may become signatory hereto (hereinafter referred to as the Employer or Contractor) and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL #18 OF MISSOURI, AFL-CIO (hereinafter referred to as the Union).

## ARTICLE I

## DURATION - TERMINATION -AMENDMENT

This Agreement shall be effective commencing May 1, 2001 and shall continue in full force to and including April 30, 2004 and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement, in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter.  The parties may at any time mutually agree to change or amend any part of this Agreement and such change or amendment shall not affect the continuing nature of this Agreement. Such change or amendment shall not be effective however until reduced to writing and signed by both parties.

## ARTICLE II

## MANAGEMENT - UNION RECOGNITION AND SECURITY

Section 1 - Union Recognition The employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in classification of work falling within the jurisdiction of the Union, as defined in Article III of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

Section 2 - Management Recognition The Union hereby recognizes and acknowledges the Tile & Marble Contractors Association of St. Louis as the representative of Employers and acknowledges that the maintenance of job site discipline is the responsibility of Employers, and that except as herein provided Employers shall have the right to hire, suspend, discipline or fire for just cause, direct the work force and in general operate their business in accordance with their judgment.

4

Section 3 - <u>Union Security</u> No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employees, provided that the Union has given the employee four (4) days notice that his/her obligation to make payment has not been met and that his/her delinquency renders him/her liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union; (a) if he/she has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he/she has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

ARTICLE III

WORK JURISDICTION

Section 1 - <u>Scope of Agreement</u> This Agreement covers all Tile Layer, Marble Setter, and Tile & Marble Finisher employees of the Employer engaged in the setting, slabbing or installing of all classes of tile or marble, whether for interior or exterior purposes, in any public or private building located anywhere within the territorial jurisdiction of the Union.

Section 2a <u>Tile & Marble Setters Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri; Clark, Lewis, Marion, Ralls, Pike, Lincoln, Warren, St.Charles, St.Louis, Franklin, Jefferson, Crawford, and including the city of St.Louis.

Section 2b <u>Tile & Marble Finishers Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri: Scotland, Clark, Knox, Lewis, Shelby, Marion, Monroe, Ralls, Audrain, Pike, Callaway, Montgomery, Lincoln, Warren, St.Charles, St.Louis, Osage, Gasconade, Franklin, Jefferson, Maries, Pulaski, Phelps, Crawford, Dent, Washington, St. Francis, St. Genevieve, Perry, Texas, Iron, Madison, Cape Girardeau, Bollinger, Shannon, Reynolds, Wayne, Howell, Oregon, Carter, Ripley, Butler, Stoddard, Scott, Mississippi, New Madrid, Dunklin, Boone and Pemiscot. This includes the City of St. Louis and the following counties in the State of Illinois: Madison, St. Clair, Bond, Fayette, Jefferson, Franklin, Hamilton, Jackson, Saline, Wayne, Williamson, Clinton, Marion, Monroe, Randolph, Perry, Washington, Union, Alexander, Hardin and Gallatin

Section 2c In the event the territorial or trade jurisdiction of the Union shall be extended during the term hereof, this Agreement shall cover such extensions.

5

Section 3 Tile Setter Work is defined as:
(a) The laying, cutting, or setting of all tile, and tile substitutes, where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundations or material that may be required to properly set and complete such work.

(b) The application of a coat or coats of mortar, prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the mortar coat is wet or dry at the time the tile is applied to it.

(c) The setting of all tile bonded with mortar, where the bed is floated, screeded, slabbed or buttered and where joints are not filled in the same operation.

(d) The setting of all tiles by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(e) The setting of tile as herein provided shall include the installation of underlayment, backer-board, waterproofing membrane, accessories and the insertion of decorative tile inserts in other materials.

(f) The setting, sealing, caulking, and installation of prefabricated tile systems.

Section 4 "Tile" is herein defined as the following products:
   (a) All burned clay products, as used in the Tile Industry either glazed or unglazed.
   (b) All composition materials, marble tiles, glass mosaics and all substitute materials for tile made in the tile-like units.
   (c) All mixtures in tile-like form of cement, metals, plastics and other materials, that are made for and intended for use as a finished floor and all places where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

Section 5 Marble Setter Work is defined as: Including, but not limited to the handling, erection or installation of interior Stone, Marble, Slate, Granite, Quartzite, Limestone, Travertine, Art Marble, Serpentine, Alberence Stone, Blue Stone or other Stone. Meaning as to Stone any foreign or domestic materials as specified and used in building interiors and customarily known as stone in the trade: Carrora, Salonyx, Vitrolite, and similar opaque glass and the laying of all Marble tile, Terrazzo tile, Slate tile, or any other material that may be used as substitutes for any of the aforementioned materials and which are installed in a similar manner. Also any of the aforementioned materials where used on exterior work up to and including two (2) inches of thickness

6

Section 6 <u>Tile & Marble Finishers Work</u> is defined as:

    (a) The handling, at the building site, all sand, cement, tile, marble or stone as defined above and all other materials that may be used and installed by tile layer, or marble mason member of Local #18 MO.

    (b) The grouting, cleaning, sealing, and mixing on the job site, and all other work as required in assisting the setter.

Section 7 <u>Teamwork</u> is essential for the improvement of the Tile & Marble Industry. Working together as a team will achieve a high standard of workmanship and quality. All members of Local #18 MO must work together in a harmonious way to combat the non-union and open shop movement.

ARTICLE IV

<u>HOURS OF WORK - OVERTIME AND HOLIDAYS</u>

Section 1 <u>Hours</u> The standard workday shall consist of eight (8) hours of work between the hours of 8:00 am and 4:30 PM with a 30 minute unpaid lunch hour occurring in the middle of the shift. The standard workweek shall consist of five standard workdays commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

Section 2 <u>Overtime</u> All time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturdays, shall be paid for at the rate of time and one-half (1 1/2) the hourly base wage rate in effect. All time worked on Sundays and on the holidays specified in Section 5 of Article IV shall be paid for at the rate of double the hourly base wage rate in effect.

Section 3 <u>Saturday Make-Up Day</u> all work done on Saturday will be done at time and one-half (1 1/2) unless the employer and employee mutually agree that Saturday shall be used as a make-up day. The employee shall not be disciplined or discriminated against for failing to agree to use Saturday as a make-up day. If an employee should lose one or more days in a workweek and use Saturday as a make-up day the pay shall be at the regular hourly base wage rate and benefits. Reasons to use Saturday as a make-up day shall be:

    1. Absence during the week was at the employee's request

    2. Shortened workweek due to acts of God

    3. Job site circumstances beyond the control of the tile contractor caused the employee to miss a day's work on that job.

7

Section 4 <u>Occupied Nonresidential Work</u> all occupied nonresidential work performed before 8:00 am and after 4:30 PM Monday through Friday will be compensated for at a premium rate of ten percent (10%) per hour above scale provided the premium hours do not bring total hours worked to more than forty (40) hours per week.

Section 5 <u>Holidays</u> The Employer agrees to recognize the following holidays. If the holiday falls on Sunday it shall be recognized on the following Monday. If the holiday falls on a Saturday it shall be recognized as a Saturday only holiday.

1. New Year's Day
2. Memorial Day
3. Independence Day
4. Labor Day
5. Veterans Day
6. Thanksgiving Day
7. Christmas Day

Section 6 <u>Show-up Time</u> When an employee is requested by an employer and reports to work pursuant to said request the employee is entitled to a minimum of two (2) hours show-up time at regular wage except where something unusual and beyond the control of the Employer occurs, which makes it impossible for the employee to work between the time said request was made and the time the employee reports for work.

8

## ARTICLE V
## TRANSPORTATION EXPENSES

**Section 1** <u>Reimbursement</u> Employees shall be reimbursed for transportation and room and board on out of town jobs in the following manner:

Mileage Zones: Air miles starting from I-270 and 40/64

> 0 to 40 miles - no reimbursement
> 41 to 50 miles - $6.00 each round trip
> 51 to 60 miles - $9.00 each round trip

**Section 1A** <u>Out of Town Meal Allowance</u> 61 to 150 miles. Meal rate to be paid for duration of the job based on five (5) days per week as follows:

> May 1, 2001 $21.00 per day
> May 1, 2002 $21.00 per day
> May 1, 2003 $21.00 per day

151 miles and over - meal rates to be paid for duration of the job based on seven (7) days per week as follows:

> May 1, 2001 $21.00 per day
> May 1, 2002 $21.00 per day
> May 1, 2003 $21.00 per day

**Section 1B** <u>Out of Town Motel Allowance</u> 61-150 miles Employer agrees to pay actual cost for motel room based on double occupancy for five (5) days per week for duration of the job. This cost to be paid as an expense allowance. The allowance shall be $35.00 per night or the rate plus tax quoted by <u>Super 8 Motels,</u> whichever is greater.

150 miles and over - Employer agrees to pay actual cost for motel room based on double occupancy for seven (7) days per week for duration of the job. This cost to be paid as an expense allowance. The allowance shall be $35.00 per night or the rate plus tax quoted by <u>Super 8 Motels</u>, whichever is greater.

9

Section 1C - <u>Travel Allowance</u> 61 miles and over.  Actual travel time to and from job site based on 60 mph average shall be paid for one round trip.  One round trip bus or train fare to be paid in addition to above.

It being understood, should an employee be removed from the job site before the completion of said job, and employee returning to said job site, shall be entitled to said meal rate and bus or train fare plus travel time for another round trip.

It being understood that should an employee be sent to a job site by himself/herself, the employer shall pay the full room rate and the meal rate shall prevail for each of the three (3) years covering this working agreement.

Section 2 it is further understood and agreed that when an employee's automobile is used for transportation as set out in Section 1, only the owner of said automobile shall be paid the operating expenses set out above. Employees are to use their automobiles at their own discretion.

Section 3 <u>Parking</u> Contractors/Employers agree to pay parking based on actual expenses upon the presentation of paid receipt.

ARTICLE VI

HIRING PREFERENCE

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement.  Layoffs shall be in reverse order of hire except where it is necessary to retain employees with certain skills in order to complete the project.

ARTICLE VII

SUBCONTRACTING

Section 1 The employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

10

Section 2 All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE VIII

## CHECK-OFF AUTHORIZATION

Section 1 Agreement to Deduct The Employer agrees to deduct and withhold from the pay due each employee covered by this Agreement a sum equal to sixty cents (.60) per hour for all hours worked, provided the Employer has received written authorization from the employee, and to remit said sum to the Union.

Section 2 Authorization to Deduct The signed authorization granting the Employer the authority to deduct the amount stated in Section 1 shall read as follows:

I, the undersigned, hereby verify that I am a member in good standing of Bricklayers and Allied Craftworkers, Local #18 Mo AFL-CIO, and I authorize you to withhold from my weekly pay check a sum equal to sixty cents (.60) per hour for all hours worked by me and to remit said amount to Local #18 MO. The undersigned further agrees and understands that this statement shall constitute and be a full and complete release for the aforesaid deduction from my weekly paycheck when paid to Local #18 MO. This authorization shall be irrevocable for a period of one (1) year from the date hereof or the termination date of the applicable collective bargaining agreement whichever first occurs and shall be renewable for successive one (1) year periods unless I give written notice to the Employer and the Union at least thirty (30) days preceding the expiration of each period of irrevocability.

-------------------------------          -------------------------------------------------
Date                                     Signature

Section 3 BAC I.U. Dues Check-off The Employer agrees to deduct an amount of one percent (1%) of gross total package for each hour worked from the pay of each employee who is a union member and who executes a voluntary check-off authorization form for the Bricklayers & Allied Craftworkers. Deductions shall be in the amount and at the intervals specified on the check-off authorization form The Employer agrees to transmit BAC I.U. dues deductions to the International Union of Bricklayers and Allied Craftworkers. The transmittals shall occur on a MONTHLY basis and shall be accompanied by a list of the names of those employees for whom BAC I.U. dues deductions have been made and the amount deducted for each employee.
The deduction shall continue for the life of this Agreement for those employees who sign BAC I.U. dues authorization forms unless they are revoked individually and in writing.

11

## ARTICLE IX

## WORKING RULES

Section 1 <u>Working Foreman</u> A working foreman shall be appointed on all jobs where eight or more union members are employed and his/her wages shall be one dollar fifty cents (1.50) per hour over and above the prevailing wage rate for journeymen setters.

Section 2 <u>Prohibition of Piece Work</u> Employers shall not bargain or contract with each other to lay a designated number of feet of tile for the day's work, nor shall they bargain or contract that a mechanic do a certain piece of work in a designated time. This bargaining or contraction shall be regarded as piece work which is not within the contemplation of the parties signing this Agreement and will be deemed by the Union to be a material breach of the Agreement; in which event the Union may take any action it deems necessary not withstanding any other provision of the Agreement.

Section 3 <u>No Limitation of Work</u> There shall be no limitation of the amount of work an employee shall perform during his working day or as to the use of machinery or tools. If an employee leaves early without permission and claims a full day worked, the employee will be docked for the time not worked and will be subject to disciplinary action by the contractor up to and including termination for cause.

Section 4 <u>Orders and Instructions</u> All orders and instructions to employees, including discharging them, shall be given by the Employer or Superintendent, unless the working foreman is specifically instructed to do so.

Section 5 <u>Proper Working Instructions</u> The Employer shall furnish to the Local #18 member proper working instructions, covering all work to be done on any and all jobs. On a complicated piece of work a setting plan shall accompany working instructions.

Section 6 <u>Working Equipment</u> All employees must be supplied with the proper working equipment such as: Soaking tub, straight edges, float strips, mixing boxes, wheelbarrows, shovels, all cutting wheels, etc., to be furnished and delivered on the job by the Employer and it is further agreed that the Employer may have the option as to whether he/she will furnish power tools and excessive equipment, such as quarry tile cutters, large chisels, etc. However it is distinctly understood that the employee does not at any time have to furnish such equipment on jobs where the use of excessive tools such as large or small power tools, chisels, etc. are required to properly do the job. It being understood that all employees shall equip themselves with proper hand tools. That the employee **MUST** INSPECT ALL EQUIPMENT DAILY AND **MUST** NOTIFY THE CONTRACTOR IMMEDIATELY IF ANY OF THE EQUIPMENT IS NOT IN PROPER SAFE CONDITION.

12

Section 7 <u>Epoxy Materials</u> all work with epoxies to be in strict accordance with manufacturer's written instructions and Local Health Department Regulations. The employer shall supply all necessary equipment such as gloves and floats. The Union shall reserve the right to remove all "Employees" from any apoxie or epoxy job where the above is not strictly adhered to. This shall include the right to notify the City and State Health Departments of flagrant violations of health hazards.

Section 8 <u>Maintenance of Equipment</u> Employers understand that OSHA provides for certain responsibilities for the proper use of equipment and that they will provide such equipment in a manner consistent with safety rules and obligations. The employee agrees to exercise prudent responsibility for the equipment furnished them by the employer including the proper care, maintenance and cleaning. Failure to do so may result in disciplinary action up to and including dismissal. Such tools, equipment and supplies will be used only in performance of work for their employer. When an employer requests an employee to return company tools in his/her possession the Union will cooperate to expedite said return.

Section 9 <u>Faulty Work</u> it is agreed that all materials and workmanship in connection with any installation shall be of such standards of quality so as not to destroy the true principles of the trade. In the event of a disagreement regarding the quality of a particular installation a committee composed of an equal number from the Union and Contractors shall inspect the work and render a decision which shall be final and binding upon all parties concerned. If the complaint is found to be justified and the employee is at fault, the member shall be required to repair the work on his or her own time. The employer shall supply the materials.

Section 10 <u>Personal Appearance</u> The employer and union agree that the tile & marble trade is a service industry and personal appearance presents an important visual image to the customer. Qualified, professional union journeyworkers should present a neat, clean well-groomed appearance. Proper attire will be worn at all times. In the interest of safety and appearance the following general guidelines will be followed for the benefits of both the union and the employer:
    A. Clean, neat, well-groomed appearance
    B. No shorts
    C. No smoking in occupied residence or public place where prohibited
    D. Must wear safety equipment as required

Section 11 <u>Maintenance of Skills</u> Because of the rapid development of new materials and methods of installation in the Tile & Marble Industry both management and union recognize the need for continuing education in order to stay current with the technical advances of the Industry. Therefore the journeyman level Tile Setter, Marble Setter, and Tile & Marble Finisher agree to participate in training classes and informational seminars as provided by the training school and the Tile & Marble Contractors.

13

Section 12 <u>Drug Testing</u> The Employer may require employees to submit to testing for alcohol or controlled substances to the extent and in the manner required by applicable law or by a project owner or in any reasonable manner for the purpose of promoting safety in the following circumstances; When there is reasonable cause to believe that an employee has used or is under the influence of such substances during working hours, when an employee has been involved in an accident involving personal injury or property damage on the job, or at random providing that an employer may not require random testing of any one employee more than twice in any calendar year. Positive test results indicating the presence of non-prescribed marijuana, cocaine, opiates, amphetamines or phencyclidine in any quantity or blood alcohol of 10/100th of one percent or more by weight or failure to submit to the drug and alcohol screen test may result in disciplinary action up to and including dismissal.

In order to enforce this policy it may be necessary to require appropriate biological specimens from both job applicants and/or current employees. When this activity is required all testing will be conducted by a company approved medical testing laboratory that has been licensed by the state. The company will bear all cost for drug and alcohol testing of employees.

## ARTICLE X

## EMPLOYER - CONTRACTOR

Section 1 <u>Determination of Status of Contractor</u> a key officer employed by a company or corporation and a member of Local #18 MO may elect to pay his/her check off dues (Article VIII, Section 1) plus a flat fee of forty dollars ($40) per month with no benefit package. This will entitle that person to work with the tools. If however the company or corporation hires three or more members of Local #18 MO he/she must lay down the tools.

If he/she elects to pay into the benefit package he/she will pay a minimum of one hundred twenty (120) hours per month. He/she will then be allowed to work with the tools.

If he/she carries a Union Card he/she will be allowed to attend union meetings but by IU law will be restricted from holding office or having an individual vote.

Section 2 <u>Surety Bond</u> Any new contractor becoming a party to this Agreement after its effective date shall secure and maintain a surety bond in the minimum amount of ten thousand dollars ($10,000) to guarantee payment of all wages, fringes and contributions provided for herein and shall furnish to the union evidence of the procurement and maintenance of bond in such amount for a period of one (1) year. Any contractor failing to pay wages or fringe benefits at the proper time provided herein will secure and maintain such a surety bond.

14

Section 3 Unemployment Compensation Insurance By the execution of this Agreement the Employer hereby agrees that he/she shall be covered under the laws of the State of Missouri relating to unemployment compensation insurance and the Employer shall provide coverage for all employees covered by this Agreement. The Employer further agrees to post account numbers indicating such coverage with the Joint Arbitration Board.

Section 4 Worker's Compensation Insurance All employees employed by an Employer under this Agreement are to be protected by Worker's Compensation Insurance as required under the laws of the State in which said employees are employed. The Employer shall furnish to the Joint Arbitration Board a certificate from the insurance company stating that such insurance has been provided. This certificate shall specify the date when such compensation insurance expires. The Employer agrees that such compensation insurance shall be maintained by him/her throughout the life of this Agreement. If an Employer fails to obtain Worker's Compensation Insurance the Union is obligated to take economic action against said employer including but not limited to removal of employees from the job, strike, picket or any other lawful action. Before any work is undertaken by employees the above-mentioned certificate must be on file with the Joint Arbitration Board.

The policies are not cancelable or subject to reduction in coverage until ten (10) days after receipt by the insured and the Union of written notice as evidenced by return receipt.

Section 5 Uniformity of Operation Any Employer operating in this jurisdiction shall work as provided in this Agreement and under which all other Employers, parties hereto now operate with this jurisdiction.

Section 6 Most Favored Nation Clause The Union agrees that if it should enter into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the marble, ceramic or quarry tile market or certain geographic areas, those same terms and conditions of employment will be made available to all Employers on the specified projects, particular segments of the market or in those geographic areas covered.

15

## ARTICLE XI

## NO STRIKE/NO LOCKOUT
## AND
## ARBITRATION

Section 1 - There shall be no strikes or lockouts over a dispute concerning an alleged breach of this Agreement during its term until the grievance procedures of this Article have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other fund contributions that have been established through bonafide collective bargaining.

Section 2 - All questions or differences arising between the parties to this Agreement relating to its interpretation or enforcement or the subject matter thereof shall be referred to a Joint Arbitration Board for determination or settlement. Pending a decision of the Joint Arbitration Board the status quo shall exist. If either party refuses to abide by the Award then the injured party will be free to take whatever economic action it deems necessary.

Section 3 Joint Arbitration Board   This Joint Arbitration Board shall be composed of ten (10) members. Five (5) to be employers, signers of this Agreement and five (5) to be members of Local #18 MO. The employer members shall be selected by the employers at a meeting of their organization and the union members to be elected by their union in the regular manner. Any decisions made by a majority vote of this committee shall be binding upon the parties signatory to this Agreement.

Grievance Procedures are as follows:

No grievance shall be recognized unless it is called to the attention of the employer by the union or to the attention of the union by the employer within five (5) days after the alleged violation is committed or discovered.

Step 1: The employee and the employer try to settle the grievance. This attempt to settle shall be done within five (5) days excluding Saturday, Sunday and legal holiday.

Step 2: If step one does not settle the grievance it shall be referred to the Business Manager. The manager shall than meet with the employer and the employee and attempt to settle the grievance. They shall meet within three (3) days excluding Saturday, Sunday and legal holidays.

16

Step 3: If step two does not settle the grievance it shall be referred to the Joint Arbitration Board within three (3) days excluding Saturday, Sunday and legal holidays. The Joint Arbitration Board shall have five (5) days to reach a decision.

Step 4: If a decision is not reached the Joint Arbitration Board shall select an impartial arbitrator to review with the board all evidence submitted relating to the grievance and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an arbitrator the matter then is referred to the American Arbitration Association.

All expenses incurred by a special arbitration shall be borne jointly by both parties to this Agreement, (Union and Contractor Association). Any decision reached during the grievance procedures shall be final and binding on all parties but shall not be precedent setting.

ARTICLE XII

PRESERVATION OF WORK

Section 1 - in order to protect and preserve for the employees covered by this Agreement all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project under its own name or under the name of another, as a corporation, company, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

Section 2 - All charges of violations of Section 1 of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XI of this Agreement. As a remedy for violations of this Section the arbitrator (or arbitration body ) provided for in Article XI is empowered at the request of the Union, to require an Employer to 1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations and 2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section, nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

17

Section 3 - If, as a result of violations of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section 2 above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

### ARTICLE XIII

WAGES AND BENEFITS
TILE & MARBLE SETTERS
RATES OF PAY, WELFARE, PENSIONS

Section 1 <u>Tile & Marble Setters Rates of Pay</u>
(a) Effective May 1, 2001 through April 30, 2002 total wages, including fringe-benefits increases, will be $31.27 the breakdown would be as follows: May 1, 2001 - $1.25 per hour increase, .70 cents increase hourly wage, .30 cents increase Health & Welfare, .15 cents increase Local pension and .10 cents increase IU pension. Wages as of May 1, 2001 - $23.32 per hour.

(b) Effective May 1, 2002 - $1.15 per hour wage increase. Said increase to be in wages or fringe benefits at the Union's option.

(c) Effective May 1, 2003 - $1.10 per hour wage increase. Said increase to be in wages or fringe benefits at the Union's option.

(d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

Section 2 <u>Health & Welfare</u> The Employer shall contribute the amount of $3.90 per hour for each hour worked by all Tile & Marble Setter members of Local #18 MO including all apprentices per Section 5 of Article XIII as of May 1, 2001 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 3 <u>Local Pension Fund Tile & Marble Setter</u> The Employer shall make contributions in the amount of $2.58 per hour for each hour worked by all Tile & Marble Setter members of Local # 18 Mo including all apprentices per Section 5 of Article XIII into the Ceramic Tile & Marble Masons Pension Fund as of May 1, 2001. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due. Pension will be 10% of base wages on future increases rounded to nearest cent.

18

Section 4 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of $1.20 per hour for each hour worked by all Tile & Marble Setters as of May 1, 2001 including all apprentices per Section 5 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 5 <u>Tile & Marble Setter Apprentice Program</u>
The rates of pay for Setter Apprentice is as follows:
a) 1st three months - 50% of journeyman wages (without Health & Welfare or Pension
               Contributions)
b) 2nd three months - 55% of journeyman wages (with Health & Welfare and no
               Pension Contributions)
c) 2nd six months   - 65% of journeyman wages (with Health & Welfare and
               Pension Contributions)
d) 3rd six months  - 70% of journeyman wage
e) 4th six months  - 75% of journeyman wage
f) 5th six months   - 85% of journeyman wage
g) 6th six months  - 90% of journeyman wage

In all of the above categories all International & Local dues are to be withheld and all contributions to the Industry Advancement, International Masonry Institute and Apprentice Training Fund shall be paid per the Collective Bargaining Agreement.

WAGES AND BENEFITS
TILE & MARBLE FINISHERS
RATES OF PAY, WELFARE, PENSIONS

Section 6 <u>Tile & Marble Finishers Rates of Pay</u>

a) Effective May 1, 2001 through April 30, 2002 total wages (including fringe benefits increases) will be $28.57 The breakdown would be as follows: May 1, 2001 $1.05 per hour increase .65 cents increase hourly wage, .30 cents increase Health & Welfare .10 cents increase Local pension.  Wages as of May 1, 2001 - $21.05 per hour.

b) Effective May 1, 2002 $1.05 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

c) Effective May 1, 2003 $1.00 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

19

Section 7 <u>Health & Welfare</u> The Employer shall contribute the amount of $3.90 per hour for each hour worked by all Tile & Marble Finisher members of Local #18 MO including all apprentices per Section 11 of Article XIII as of May 1, 2001 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 8 <u>Local Pension Fund Tile & Marble Finisher</u> The Employer shall make contributions in the amount of $2.75 per hour for each hour worked by all Tile & Marble Finishers members of Local #18 MO including all apprentices per Section 11 of Article XIII into the Tile & Marble Finishers Pension Fund as of May 1, 2001. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 9 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of .60 cents per hour for each hour worked by all Tile & Marble Finishers as of May 1, 2001 including all apprentices per section 11 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 10 <u>Grandfather Clause</u> protecting all finishers who were members before August 1, 1989. The "Grandfather" Finisher will get a percentage raise based on all new negotiations.

Section 11a <u>Finisher Apprentice.</u> All new Finishers will go into an apprentice program. First year the apprentice will attend class. The remaining two years will be on the job training -no classes. At the end of three (3) years Finishers wages will be 85% of Setter's wages.

Section 11b <u>The Finisher Apprentice Program</u>: The rates of pay for the Finisher's Apprentice shall start at 50% of Journeyman Setters wages.
1st - 3 months - 50% No Health & Welfare or Pension
2nd - 3 months - 55% with Health & Welfare no Pension
2nd - 6 months - 60% with full Health & Welfare & Pension
3rd - 6 months - 65% with full Health & Welfare & Pension
4th - 6 months - 70% with full Health & Welfare & Pension
5th - 6 months - 75% with full Health & Welfare & Pension
6th - 6 months - 80% with full Health & Welfare & Pension

Section 12 <u>Apprentice Fund</u> The Employer shall contribute the amount of ten (.10) cents for each hour worked by each employee covered by this Agreement to the Tile & Marble Apprentice Fund. In the event it is determined by the Joint Apprentice Committee that a greater amount is required to effectively operate the apprentice program, the Employer will increase the contribution to the Apprenticeship Fund in the amount established by the Joint Apprentice Committee. Such increase in contribution shall come from the Union allocation of compensation increase provided for in Sections 1 and 6.

20

Section 12A <u>Apprentices</u> In order to train sufficient skilled setters and finishers for the industry, the necessity for employment of apprentices and/or improver apprentices is recognized and encouraged by parties to this agreement. It is agreed that the apprenticeship standards adopted by the local Joint Apprentice Committee are incorporated herein by reference as if fully set out.

Section 13 <u>Industry Advancement</u> All Contractors/employers signatory to this Agreement will contribute two (.02) cents per hour for each working member of Local #18 MO employed by the contractor/employer to a fund for industry advancement. All contractors signatory to this Agreement will be considered members in good standing of the Tile & Marble Contractors Association of Greater St. Louis and will be able to hold office and vote.

Section 14 <u>International Masonry Institute</u> the parties to this Agreement recognize the need for effective apprenticeship and training which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the IMI is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in this program area in an effective manner of coordinating through a single regional/international system. With this principle in mind, the parties agree as follows: effective May 1, 2001 the contribution to the International Masonry Institute shall be fifteen (.15) cents per hour for each Tile & Marble Setter and fifteen (.15) cents per hour for each Tile & Marble Finisher for which a covered employee receives pay.

Section 15 <u>Wage Information</u> all members of Local #18 MO shall be paid at least once a week. Friday shall be payday and that pay shall include all time up to the previous Tuesday night. Pay shall be in law money of the United States. They shall be paid not later than 4:30 PM on local work. Employee wage payment will show amount of gross pay and itemized deductions, together with dates of the pay period covered, the name of the Company, the name of the employee and total number of both regular and overtime hours worked and upon request, copies will be supplied to the funds and/or the Union office by the Employer.

Section 16 - If the contractor/employer elects to mail the pay; and should any employee not receive his/her pay at his/her residence on the Friday payday, the employer will be charged "waiting time". The limit to be two (2) days pay which will begin at 8:am and end at 4:30 PM on Saturday and Sunday. No claim will be allowed if the postmark on the letter containing the pay is Thursday PM before payday. If however, the employee is required to pick up his/her check from the shop on Saturday he/she will be paid an additional two (2) hours pay at base pay.

Section 17 -<u>Federal Wage Control</u> If Federal Wage Controls are imposed for the Tile & Marble section of the construction industry or the construction industry in general this local union shall therefore receive in addition to the wages and fringe benefit fund contributions provided for in this Agreement any amount previously eliminated by said Controls if wage controls were in effect less than one (1) year. If wage control is in effect for more than one (1) year then any wage increase during that one-year period would be waived. However, if that one (1) year period laps two raises, only the first raise would be waived.

21

## ARTICLE XIV
## NO DISCRIMINATION AND GENERAL UNDERSTANDING

Section 1 No Discrimination The Employer(s) and the Union mutually recognize the need for implementing equal opportunity to all qualified employees and applicants for employment without regard to race, color, creed, sex, age or national origin. There shall be no discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, union membership, union activity or status as a disabled veteran, or a veteran of the Vietnam Era except where age is a bonafide occupational qualification or handicap is a bonafide occupational disqualification.

Section 2 Delinquencies The Employer further agrees to keep true and accurate records of his/her payroll and expenses paid to his/her employees covered by this Agreement and the employer shall make them accessible for audit by the Trustees of any existing Trust Fund or their appointee or disinterested representatives. The cost of such representative shall be paid by the Trust Fund to which contributions are due. If such audit by the disinterested party discloses errors in the bookkeeping of the employer then a cost of the audit shall be paid by the employer being investigated.

Upon notice to the Union from the Trustees of a benefit fund to which the employer is obligated to make contributions under this Agreement that the employer is delinquent in making contributions to such benefit fund, the Union shall be entitled to take all recourse, including strike action for collection of the delinquency and to protect against its reoccurrence any other provision of this Agreement notwithstanding.

Notice from the Trustees to the Union of an employer's delinquency status shall be conclusive and reliance thereon by the Union shall not be accountable. Neither the issue of delinquency in contributions nor the extent thereof nor action taken by the Union to compel collection shall be subject to the grievance and arbitration provisions of this Agreement.

In the event the Employer is delinquent in his/her contributions to the Funds and it becomes necessary for the Trustees of said funds to employ an attorney for the purpose of collecting delinquencies and any penalties, the Employer shall be responsible for and required to pay any reasonable attorney's fees and other costs incurred in the collection of said monies. In the further event the Employer is delinquent in his/her contributions to said Funds, the Union shall deem such delinquency to be a material breach of the Agreement and shall have the right to take economic action against said Employer including, but not limited to removal of the employees from the job, strike, picket, forfeiture of Surety Bond or institution of Surety Bond, (Article X, Section 2) or any other lawful economic action

Section 3 In the event the Joint Arbitration Board approves a different and more efficient method of processing the check-off and payments of contributions such shall be implemented and shall replace all existing methods in accordance with said Board's instructions.

22

Section 4 <u>Traveling Contractors</u> When the employer has any work specified in Article III of this Agreement to be performed outside of the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the employer agrees to abide by the full terms and conditions of the agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article XIII of this Agreement but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the job site Local Agreement. The employer shall, in all other matters be governed by the provisions established in the job site local. Where there is no local agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

Section 5 <u>Out-Of-Town Contractors</u> Securing work in the jurisdiction of Local #18 MO may send one key person to such work, (one Tile Setter, or one Marble Mason); in addition, the out-of-town contractor may also send one (1) key person as a Finisher. If additional Tile Setters, Marble Masons or Finishers are needed for the job they must come from Local #18 MO. If Local #18 MO has no members available for the job, then the out-of-town contractors may bring in his/her employees from his/her home local. Local #18 MO must be notified forty-eight (48) hours in advance of start of job.

23
ARTICLE XV

SEVERABILITY

Section 1 Validity of Agreement In the event any Federal or State Law is held to invalidate any Article, Section, Clause, or Provision of this Agreement, said Article, Section, Clause or Provision shall be stricken from the Agreement and the balance and remainder of this Agreement shall remain in full force and effect.

The parties shall meet forthwith for the purpose of negotiating by amendment or otherwise any Article, Section, Clause or Provision which may be held to be illegal pursuant to a Federal or State law by a final court decision interpreting such law.

AGREEMENT EFFECTIVE MAY 1, 2001 through APRIL 30, 2004

TILE & MARBLE
CONTRACTORS ASSOCIATION
ST.LOUIS & VICINITY

BAC LOCAL #18 MO

UNION
Name                                Date

EMPLOYER
Name                                Date

| Union signatures | Date | Employer signatures | Date |
|---|---|---|---|
| *(signature)* | 4/30/01 | George R Wood | 5-1-01 |
| *(signature)* | 4/30/01 | Emily A Williams | 5/1/01 |
| Jim Mull | 4/30/01 | *(signature)* | 5/2/01 |
| Stephen C. Laury | 5/2/01 | Nelson J Fargo | 5/3/2001 |
| Jeffy Foster | 5/2/01 | *(signature)* | 05/03/01 |

Name of Company:  Mulherin Architectural Marble & Granite, Inc.

Signature and Title: *(signature)* / Timothy M. Mulherin / President

Company Address:  94 Algana Court    St. Peters, Missouri 63376-3971

Telephone:  636-441-3533    fAX  636-441-3544

Date:  june 12, 2001

# Employer Participation Agreement
## Pattern Standards

MULHERIN ARCHITECTURAL MARBLE AND GRANITE, INC.
Name of Company

94 Algana Court                St. Peters, Missouri  63376-3971
Street Address                 City, State, Zip

The company named above agrees to participate in the Apprenticeship Program utilizing the Pattern Standards developed by the Tile, Marble, Mosaic & Terrazzo Joint Apprenticeship Committee in cooperation with the Bureau of Apprenticeship and Training.  The undersigned employer agrees to comply with the provisions of said standards and to abide by the rules and decisions of the JAC.

_Timothy M. Mulherin_ / President              June 12, 2001
Company Approving Official (Signature)         Date

TIMOTHY M. MULHERIN  / President
Name and Title (Print or Type)

The current statistical data on my work force is provided for U.S. Department of Labor, Bureau of Apprenticeship and Training as follows:

Journeyworkers  3    Apprentices  1

636-441-3533                     636-441-3544
Telephone                        Fax Number

94 Algana Court                  St. Peters, MO. 63376-3971
Street Address                   City, State, Zip

---

This section will be completed by U.S. Department of Labor, Bureau of Apprenticeship and Training.

Registered as part of the Tile, Marble, Mosaic & Terrazzo Joint Apprenticeship Program in accordance with the basic standards of Apprenticeship established by the Secretary of Labor.

Registered Agency                Registration Number

Signature                        Date

# INDEX

Apprentice------------------------------------------20
Apprentice Fund-------------------------------------19
Arbitration------------------------------------------15
Authorization to Deduct-----------------------------10
Delinquencies---------------------------------------21
Determination of Contractor-------------------------13
Drug Testing --------------------------------------13
Dues Check-Off -----------------------------------10
Duration----------------------------------------------3
Epoxy Materials ----------------------------------12
Equipment------------------------------------------11
Faulty-----------------------------------------------12
Favored Nation Clause-------------------------------14
Federal Wage Control--------------------------------20
Finishers Territorial Jurisdiction--------------------4
Grandfather Clause----------------------------------19
Health & Welfare Setters----------------------------17
Health & Welfare Finishers--------------------------19
Hiring Preference------------------------------------9
Holidays---------------------------------------------7
Hours------------------------------------------------6
IU Pension Setters----------------------------------18
IU Pension Finishers--------------------------------19
Industry Advancement-------------------------------20
International Masonry Institute----------------------20
Limitation of Work----------------------------------11
Local Pension Setters-------------------------------17
Local Pension Fitters-------------------------------19
Maintenance of Skills-------------------------------12
Maintenance of Equipment---------------------------12
Management Recognition-----------------------------3
Marble Setter Work---------------------------------5
Mileage Reimbursement-----------------------------8
No Discrimination & General Understanding--------21

Occupied Non-Residential----------------------------7
Orders and Working Instructions----------------------11
Out-of-town Meal Allowance--------------------------8
Out-of-Town Contractors-----------------------------22
Out-of-Town Travel Allowance------------------------9
Out-of-Town Motel Allowance-------------------------8
Overtime---------------------------------------------6
Parking----------------------------------------------9
Personal Appearance --------------------------------12
Piece Work --------------------------------------11
Preservation of Work--------------------------------16
Regular Work Hours----------------------------------6
Saturday Make-up Day--------------------------------6
Scope of Agreement----------------------------------4
Setters Territorial Jurisdiction----------------------4
Show-up Time----------------------------------------7
Sub-Contracting-------------------------------------9
Surety Bond-----------------------------------------13
Teamwork--------------------------------------------6
Tile & Marble Finishers Apprentice Program--------19
Tile & Marble Finisher Work-------------------------6
Tile & Marble Finisher Wages & Benefits-----------18
Tile & Marble Setter Apprentice Program-----------18
Tile & Marble Setter Wages & Benefits-------------17
Tile Setter Work-------------------------------------5
Traveling Contractors--------------------------------22
Unemployment Compensation Insurance-----------14
Uniformity of Operation-----------------------------14
Union Recognition-----------------------------------3
Union Security---------------------------------------4
Validity of Agreement-------------------------------23
Wage Information------------------------------------20
Workers Compensation Insurance-------------------14
Working Foreman------------------------------------11

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN FLYNN, et al. | MULHERIN ARCHITECTURAL MARBLE & GRANITE, INC. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/* *2255* | ○ **H.** *Employment* *Discrimination* | ○ **I.** *FOIA/PRIVACY* *ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA* *(non-employment)* | ○ **L.** *Other Civil Rights* *(non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**
○ 1 Original
Proceeding  ○ 2 Removed
from State
Court  ○ 3 Remanded from
Appellate Court  ○ 4 Reinstated
or Reopened  ○ 5 Transferred from
another district
(specify)  ○ 6 Multi district
Litigation  ○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN**
**COMPLAINT**  CHECK IF THIS IS A CLASS
☐ ACTION UNDER F.R.C.P. 23  **DEMAND $** [_____]  Check YES only if demanded in complaint
**JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S)**
**IF ANY**  (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 2/7/08   SIGNATURE OF ATTORNEY OF RECORD   [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.